| | |
|---|---|
| DIRECTV, INC., *Plaintiff,* v. JOEL CARRERA, *Defendant.* | CIVIL ACTION NO. 6:03-CV-00093 <br><br> MEMORANDUM OPINION <br><br> JUDGE NORMAN K. MOON |

On November 11, 2003, DIRECTV, Inc. ("DIRECTV"), filed a complaint in this Court against Defendant Joel Carrera, seeking damages and injunctive relief against Carrera for the assembly, distribution, possession and use of illegitimate devices primarily designed to gain unauthorized access to its satellite communication signals, in violation of federal communication and state laws. On February 18, 2005, the Court conducted a bench trial in this case.

I. FINDINGS OF FACT

1. DIRECTV is a California corporation engaged in the business of distributing satellite television broadcasts throughout the United States.

2. DIRECTV has invested a significant amount of money to develop a satellite system capable of transmitting compressed, digitized and encrypted video and audio signals to homes and businesses nationwide. DIRECTV owns proprietary rights in its satellite programming.

3. Through its satellite programming, DIRECTV offers several different satellite television packages. DIRECTV offers forty premium movie channels, including Home Box

Office, Showtime, Cinemax, Movie Channel, Encore channels, the Family Pack, and local channels for many markets throughout the United States. DIRECTV also offers subscriptions to specialized sporting packages, one-time viewing movies and events in the form of pay-per-view channels, and numerous pay-per-view boxing and special event matches. Acquiring the rights to distribute all of its satellite programming results in significant expense to DIRECTV.

4. Using electronic scrambling, DIRECTV encrypts its satellite programming to provide security for and prevent unauthorized viewing. The satellite programming is received through the use of a fixed outdoor satellite dish designed to capture encrypted satellite signals. The dish is connected to a receiver, which, in turn, is connected to a television. The receiver is able to decrypt the satellite programming by use of a removable and replaceable access card containing a computer chip which houses the programming sold by DIRECTV.

5. The access card is programmed by DIRECTV to decrypt as much or as little of the satellite programming as the DIRECTV customer has paid for in their monthly subscription. Only an authorized DIRECTV customer can have an access card to decrypt the satellite programming. Because of satellite programming piracy, DIRECTV has distributed five versions of its access cards to its customers since it began broadcasting the satellite programming in 1994. DIRECTV did this to combat repeated attempts and some successes by satellite signal pirates to "hack" the access cards in order to illegally intercept the satellite programming. Three of the access cards have been hacked, allowing the illegal interception of satellite programming.

6. Satellite signal pirates who illegally decrypt and steal satellite programming have used a variety of devices and methods. One method is use of a printed computer board, called a

2

programmer or an unlooper, to simulate an access card by using illegal software that decrypts the satellite programming. Another method allows the satellite signal pirates to load illegal software onto an access card chip. A third method uses an emulator which simulates, or clones, legal access card software.

7. To protect its legitimate business interests and its proprietary rights, DIRECTV periodically attempts to thwart the theft of its satellite programming by sending out "electronic countermeasures" ("ECMs") which target and disable "hacked" access cards. Additionally, DIRECTV's office of signal integrity is constantly investigating the theft of satellite programming. Through its investigations, DIRECTV identified Computer Shanty as one of many businesses that manufactured and/or sold illegal products designed to pirate satellite programming (the "pirate distributors"). The pirate distributors sell and ship devices used to intercept satellite programming to purchasers (the "pirate device purchasers"). DIRECTV executed civil writs of seizure on several such businesses, including Computer Shanty. Upon executing the civil writs of seizure, DIRECTV recovered documents detailing the names and addresses of pirate device purchasers.

8. When DIRECTV conducted a raid on Computer Shanty, it recovered records for Defendant Joel Carrera, listing Carrera's name, address, e-mail address, phone number, and purchase records along with other documents.

9. Computer Shanty's records listed a street address for Joel Carrera of 9119 Richmond Highway, Box 3, Lynchburg, Virginia. Defendant Carrera has admitted that he lived at this address from October 2000 through April 2001.

10. Computer Shanty's records listed an e-mail address for Joel Carrera of carrerajr@hotmail.com. Defendant has admitted that this is his e-mail address. During Defendant's deposition, he stated that no one else used this e-mail address or knew the password to this e-mail address.

11. Defendant Joel Carrera lives and works in Lynchburg, Virginia. Carrera lives at 4715 Boonsboro Road, Apartment 80, in Lynchburg.

12. Carrera has a DIRECTV Dish and Receiver. Carrera has subscribed to DIRECTV services.

13. The purchase records discovered from the raid of Computer Shanty show that on January 17, 2001, Carrera ordered a "DualPro WTX Ultimate Unlooper Programmer" from Computer Shanty for $209. Carrera's credit card records show that he made a purchase of $209 from Computer Shanty on January 17.

14. The Computer Shanty "DualPro WTX Ultimate Unlooper Programmer" is a device designed to pirate satellite programming.

15. Computer Shanty's purchase records also show that on January 26, 2001, Carrera ordered an "Emulator complete with cables" from Computer Shanty for $79.95. The records also show that on February 10, 2001, Defendant Carrera received a credit of $79.95 from Computer Shanty because he returned the emulator. Defendant Carrera's credit card records show that he received a credit of $79.95 to his account from Computer Shanty on February 12, 2001.

4

16. The Computer Shanty "Emulator complete with cables" is a device designed to pirate satellite programming.

17. Carrera's purchase of these devices also was confirmed by the information in the packing slips and in credit card statements that Carrera provided to DIRECTV.

18. When Carrera purchased the unlooper from Computer Shanty on January 17, 2001, this device worked to pirate DIRECTV'S satellite signal. However, on January 21, 2001, DIRECTV instituted its largest electronic countermeasure, which was named "Black Sunday" by the piracy community. Unloopers such as the one purchased by Carrera on January 17 no longer worked to intercept DIRECTV's satellite signal following Black Sunday. However, emulators, such as the one purchased by Carrera on January 26, 2001, did work to pirate DIRECTV'S signal following Black Sunday. The sale of emulators to pirate device purchasers dramatically increased following Black Sunday.

19. Carrera kept his DIRECTV account suspended (his access card remained active but it was not receiving any programming) from December 17, 2000, until July 9, 2002. Carrera reactivated his account and began receiving programming on July 9, 2002, but asked for his account to be suspended again on August 23, 2002. Maintaining a suspended DIRECTV account is consistent with satellite piracy, because keeping the access card active prevents DIRECTV from "blacklisting" or detecting the access card through its electronic countermeasures.

5

## II. CONCLUSIONS OF LAW

1. This Court has personal jurisdiction over Carrera because he resides within the jurisdiction of this Court.

2. This Court has subject matter jurisdiction over Carrera pursuant to 28 U.S.C. § 1331.

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 127.

4. Carrera violated the Federal Communications Act, 47 U.S.C. § 605(a), by receiving or assisting others in receiving DIRECTV's satellite programming without authorization, and used such transmission for his own benefit or for the benefit of another not entitled thereto. The evidence conclusively establishes that Carrera purchased two devices from Computer Shanty which were designed to pirate satellite programming. Carrera's interception of DIRECTV's satellite programming without authorization and use of this programming for his own benefit can be inferred both from his purchases of these devices and from his DIRECTV account history of maintaining a suspended account, which is consistent with the illegal interception of DIRECTV'S satellite signal.

5. Carrera did not violate section 605(e)(4) of the Federal Communications Act. A person violates this section by assembling or modifying devices, knowing or having reason to know that the devices were primarily used for the unauthorized decryption of DIRECTV's programming, or were intended to assist other persons in the unauthorized reception and use of DIRECTV's encrypted satellite programming. 47 U.S.C. § 605(e)(4) (2001). DIRECTV presented no evidence that Carrera assembled or modified the two devices he purchased. Mere purchase and use of pirate access devices does not constitute a violation of section 605(e)(4).

*See, e.g., DIRECTV, Inc. v. Borich*, No. 1:03-2146, 2004 WL 2359414, at * 3 (S.D. W. Va. Sept. 17, 2004) (stating that this section was intended to target manufacturers and distributors of pirate access devices, not consumers). Accordingly, the Court finds that DIRECTV did not present evidence sufficient to establish a violation of this section.

6. Carrera violated the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a), by intentionally intercepting, attempting to intercept, or having another person intercept or attempt to intercept, DIRECTV's encrypted satellite programming. Carrera's purchases of the pirate access devices combined with his DIRECTV account behavior create an inference that Carrera intercepted or attempted to intercept DIRECTV'S satellite programming.

7. DIRECTV has proprietary rights in the intercepted Satellite Programming. Carrera's violation has injured and will continue to injure DIRECTV by depriving DIRECTV of its ability to maximize revenues, which it seeks to derive from satellite transmissions.

The Court finds that Carrera has committed two separate violations of 47 U.S.C. § 605(a)—one violation for each of the pirate access devices he purchased. Plaintiff requests statutory damages in the amount of $10,000 for each violation. The Court, however, is authorized to award statutory damages between $1,000 and $10,000 for each violation as the Court considers just. 47 U.S.C. § 605(e)(3)(C)(i)(II) (2001). Considering all of the circumstances of this case, the Court finds it just to award damages of $3750 for each violation. Accordingly, Plaintiff is awarded $7500 in damages under 47 U.S.C. § 605(a). As stated earlier,

7

the Court will not award damages under 47 U.S.C. § 605(e)(4) because Plaintiff has not established a violation of this section.

Plaintiff also requests statutory damages for Defendant's violation of the Electronic Communications Privacy Act, 18 U.S.C. § 2511(1)(a). The Electronic Communications Privacy Act authorizes a Court to award statutory damages of whichever is greater, $100 a day for each day of violation or $10,000, for each violation of the act. 18 U.S.C. § 2520(c)(2)(B) (2000). The Court, however, has the discretion not to award damages under the Act. *See id.* (stating that the Court *may* assess as damages the greater of the actual damages or statutory damages); *Culbertson v. Culbertson*, 143 F.3d 825, 827 (4th Cir. 1998) (stating that a district court has the discretion not to award damages under 18 U.S.C. § 2520(c)(2)); *DIRECTV, Inc., v. McDougall*, No. SA-03-CA-1165, 2004 WL 2580769, at *5 (W.D. Tex. Nov. 12, 2004) (stating that courts are in disagreement as to whether a district court has the discretion not to award damages for a violation of 18 U.S.C. § 2511(1)(a), but that the Fourth Circuit has concluded that courts *do* have the discretion not to award damages under this section). Because the Court has already awarded damages of $7500 under the Federal Communications Act, and this amount is sufficient to adequately punish Carrera, adequately compensate DIRECTV for any damage it suffered, and sufficiently deter further violations of the Act, the Court declines to award damages under 18 U.S.C. § 2511. *See DIRECTV, Inc. v. Huynh*, 318 F. Supp. 2d 1122, 1132 (M.D. Ala. 2004).

For the reasons stated above and based on the Court's findings of fact and conclusions of law, the Court enters judgment for Plaintiff and awards Plaintiff $7500 in damages for

Case 6:03-cv-00093-NKM-mfu Document 91 Filed 08/19/05 Page 8 of 9 Pageid#: 624

Defendant's violations of 47 U.S.C. § 605(a). An award of attorney's fees and costs under § 605(e)(3)(B)(iii) shall follow.

An appropriate Order shall issue. The Clerk of the Court is directed to send a copy of this Memorandum Opinion to all parties.

ENTERED: *Norman K. Moon*
U.S. District Judge

August 19, 2005
Date

9